**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ASSOCIATION OF ADMINISTRATIVE | ) | |
| LAW JUDGES, JUDICIAL COUNCIL | ) | |
| NO. 1, IFPTE, AFL-CIO & CLC; | ) | |
| CYNTHIA M. BRETTHAUER; ROBIN | ) | |
| HENRIE; and GILBERT MARTINEZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 13-cv-2925 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, members of the Association of Administrative Law Judges et al (collectively "ALJs"), filed a complaint challenging a Benchmarks and Directive issued by the Social Security Administration ("Agency" or "SSA") imposing an agency-wide requirement that SSA administrative law judges decide 500 – 700 cases per year. The ALJs allege that SSA has imposed an illegal quota infringing on the ALJ's right to decisional independence under the Administrative Procedures Act ("APA"). Defendant, Carolyn Colvin, Commissioner of the SSA, moves to dismiss pursuant to Rule 12(b)(1) arguing that this Court lacks subject matter jurisdiction because the Civil Service Reform Act ("CSRA") precludes jurisdiction and, even if this Court had jurisdiction the plaintiffs lack standing. For the reasons stated herein the Court grants the motion.

**Background**

Plaintiffs challenge a violation of their rights under the Administrative Procedure Act ("APA") to "freedom from agency interference, and specifically, their right to decisional

1

independence." The Agency adopted a series of "Benchmarks" requiring the completion of certain ALJ controlled stages of the disability hearing process within a specified number of calendar days. The Agency also issued a Directive, requiring all ALJS "to issue 500-700 legally sufficient decisions each year."

Plaintiffs allege infringement of their statutory decisional independence, interference with their oath of office and duties, constructive reduction in salary, an adverse effect on career advancements, and damage to their professional reputations because of the Benchmarks and Directive. Plaintiffs are seeking a declaration that the Benchmarks and Directive constitute an illegal performance and for this Court to enjoin the Agency from imposing a quota now or in the future.

## Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must dismiss any action for which it lacks subject matter jurisdiction. "On a motion to dismiss for lack of subject matter jurisdiction, the court is not bound to accept the truth of the allegations in the complaint, but may look beyond the complaint and the pleadings to evidence that calls the court's jurisdiction into doubt." *Bastien v. AT & T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000). The party asserting jurisdiction has the burden of establishing it under Rule 12(b)(1). *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir.2003).

## Discussion

Defendant moves to dismiss the ALJs' complaint arguing that the Court does not have jurisdiction under the APA. Alternatively, if the Court determines it does have jurisdiction over plaintiffs' claims under the APA, the defendant argues that the case should still be dismissed because the plaintiffs lack standing.

The APA allows judicial review of a "final agency action" for which there is no other adequate remedy or an agency action that is made reviewable by statute. 5 U.S.C. § 704. Before finding that judicial review is available, the court must confirm that such review does not fall within either of the APA's two exceptions: (1) where a statute expressly precludes judicial review; or (2) where agency action is committed to agency discretion by law. 5 U.S.C. § 701. Defendant argues that the remedial scheme set forth by the Civil Service Reform Act ("CSRA") expressly precludes judicial review in this case by this Court.

The CSRA protects the rights of all federal employees, including ALJs, to be free from "prohibited personnel practices" taken against them. 5 U.S.C. §2302. The statute states that "a significant change in working conditions" is a "personnel action" and describes prohibitions in regards to the personnel actions. 5 U.S.C. 2302(a)(2)(A); *See also* § 2302(b) (prohibiting personnel actions that arise from improper motives and reasons such as discrimination, nepotism, or retaliation). The statute details a variety of causes of actions, protections, remedies, and the availability of administrative and judicial review when an employee's rights are violated. *Grosdidier v. Chairman, Broad. Bd. Of Gov.*, 560 F. 3d 495, 497 (D.C. Cir. 2009). The Supreme Court referred to the CSRA as a "comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (2012). When Congress created the CSRA they wanted to replace the disorganized and unsystematic arrangements in place for administrative and judicial review. They therefore designed the statute to balance the legitimate interests of the numerous categories of federal employees with the needs of complete and efficient administration. *Id.* at 44-45. Federal employees are not to circumvent the CSRA's requirements by resorting to the catchall APA when challenging agency employment actions. *Grosdidier*, 560 F.3d at 497. By creating the CSRA, Congress removed the jurisdiction of

federal district courts over personnel actions arising out of federal employment. *Paige v. Cisneros*, 91 F.3d 40, 43 (7th Cir. 1996).

This case is comparable to *Mahoney v. Donovan* where ALJ Mahoney brought an action under the APA for violation of his decisional independence. 721 F.3d 633, 634 (D.C. Cir. 2013). Mahoney argued his claims were not "personnel actions" and thus were not covered by the CSRA. Mahoney complained, among other things, that his supervisor failed to assign him cases in a rotating manner and instead assigned cases based on political considerations. *Id.* The court rejected this argument and found that Mahoney's complaint concerning the selective assignment of cases to be a "working condition" which therefore fell under "personnel actions" within the CSRA. *Id.* at 636.

Similarly here, the ALJs assert that they are not bringing their claims under the CSRA, but that defendant violated the APA by interfering with their decisional independence. Although presented as interference with decisional independence a review of the complaint shows that the ALJs' allegations are actually challenging working conditions and duties. For example, plaintiffs allege that the quota impedes their ability to render carefully reasoned decisions and forces them to take shortcuts through the hearing process. They also allege interference with their statutory and regulatory duties because of the Benchmarks and Directive. Plaintiffs contend that the Agency aggressively enforces the quota with formal disciplinary action and reprimands, as well as less formal discipline such as counseling, threats, and intimidation. They claim that ALJs who fail to meet the quota have had staff and resources withheld, and have had their requests for leave delayed or refused. Rather than indicating that the Agency is interfering with decisional independence, the allegations show that a change in working conditions resulted from the Benchmarks and Directive. The allegations in the complaint also show the changes in working

conditions predominantly originated after disciplinary actions and the threat of disciplinary actions. It appears to this Court that the ALJs' claims stem not from decisional interference by the Agency, but from a change in working conditions that resulted from the Agency demanding the ALJs meet certain benchmarks. Thus, their claims fall squarely within the CSRA's coverage.

Defendant also argues that plaintiffs must exhaust their administrative remedies as required by Chapter 71 of the CSRA, known as the Federal Labor-Management Relations Act ("FLMRA"). *See* 5 U.S.C. § 7103. Plaintiffs argue that since the FLMRA is only the exclusive *administrative* procedure for resolving grievances under its coverage, they are still entitled to *judicial* remedies. FLMRA is the exclusive administrative procedure for resolving grievances falling under its coverage. 5 U.S.C. § 7103 (explaining a "grievance" within the statute includes "any complaint by any employee, labor organization, or agency concerning any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment").[1] Therefore, the FLMRA does not preclude the possibility of judicial remedies. *See Filebark v. United States DOT*, 555 F.3d 1009, 1012 (D.C. Cir. 2009). Even if the FLMRA alone does not have a preclusive effect, it does not confer jurisdiction nor does it create a cause of action for the ALJs to bring their complaint in federal court. *Whitman v. Department of Transportation*, 547 U.S. 512, 513 (2006).

Here, plaintiffs claim they are asserting their claim under the APA, not the CSRA, and therefore the may seek judicial relief and need not exhaust their administrative remedies under the FLMRA. However, this Court has already found that the quota of which plaintiffs complain constitutes a change in working conditions subject to the CSRA.

---

[1] Under Chapter 75, the CRSA covers actions against ALJs specifically in respect to removal, suspension, a reduction in grade, a reduction in pay, and a furlough of 30 days or less. 5 U.S.C. § 7521. However this chapter does not apply in this case.

Plaintiffs argue that since they are not seeking relief for specific adverse personnel actions taken against them individually, but against agency-wide action affecting hundreds of ALJs, the CSRA does not apply. Yet, the CSRA applies to system-wide challenges of agency policy the same way it does to an individual challenge. *Nyunt v. Chariman, Braod. Bd. Of Govenors*, 589 F.3d 445, 448-449 (D.C. Cir. 2009).

Plaintiffs also argue the CSRA is not applicable because their claim cannot be redressed under the statute by the U.S. Office of Special Counsel ("OSC"). This argument fails. The CSRA is also the exclusive means of redressing employment disputes even when, as the ALJs allege here, the statute provides no relief. *See Elgin v. Department of Treasury*, 132 S. Ct. 2126, 2133 (2012) (disagreeing with the petitioners' argument that the CSRA provided no meaningful review of their claim because the MSPB lacked authority to declare a federal statute unconstitutional). However, the OSC does in fact have the power to investigate the ALJs concerns about the alleged quota because it is authorized to investigate a change in working conditions motivated by improper reasons. 5 U.S.C. §1214. Accordingly, this Court finds that the ALJs claim falls squarely within the CSRA and this Court lacks subject matter jurisdiction to review the matter.

Because this Court finds it lacks subject matter jurisdiction, it need not address whether the plaintiffs have standing to assert the claims. Based on the foregoing, defendant's Motion to Dismiss [13] is granted.

IT IS SO ORDERED.

Date: February 26, 2014        Entered: _____

United States District Judge